UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

J. V. PREYER, individually and as the
personal representative of
The Estate of Jerry Preyer,
and on behalf of Jerry Preyer's
Survivors and the Beneficiaries of
Jerry Preyer's Estate,

        **Plaintiffs,**

vs.                                Case No. 3:08cv247/MCR/MD

**SHERIFF RON McNESBY, et al.,**

        **Defendants.**
_____/

## O R D E R

In this action brought pursuant to 42 U.S.C. § 1983 and state law J. V. Preyer ("plaintiff"), as personal representative of the Estate of Jerry Preyer, sues Escambia County Sheriff Ron McNesby ("McNesby"); Escambia County, Florida; six Escambia County deputy sheriffs employed at the Escambia County Jail ("the Jail" or "ECJ"); ECJ's inmate health care provider, Prison Health Services, Inc. ("PHS"); six PHS employees; and Taser International, Inc.[1] Plaintiff is the father of Jerry Preyer ("Preyer"), who died June 13, 2006,

---

[1] Five of the deputy sheriffs named as defendants are ECJ correctional officers: Ronald Hankinson ("Hankinson"), David Phillips ("Phillips"), Joseph Lamar Brazwell, Jr. ("Brazwell"), John Covotta ("Covotta"), and Shaun Michael White ("S. White") (together, "the correctional officer defendants"). The sixth deputy sheriff is Barbara Wertz ("Wertz"), who is employed as an ECJ administrator.  The PHS employees are Margaret Grice ("Grice"), Lynn Laird ("Laird"), Piotr Szmurlo, M.D. ("Szmurlo"), Cabot White ("C. White"), Mary Davis ("Davis"), and Trudy Burden ("Burden") (together, "the PHS defendants"). Two other defendants, Armor Correctional Health Services, Inc., and PHS employee Elaine Gregory ("Gregory"), have been voluntarily dismissed from the action.  Gregory's pending motion should therefore be terminated by the clerk.
     By operation of law the current Escambia County Sheriff, David Morgan, is substituted for former Sheriff Ron McNesby ("McNesby"), in his official capacity, as a party defendant. *See* Fed.R.Civ.P. 25(d). The clerk therefore will be directed to add Sheriff Morgan to the docket.  To the extent McNesby is named in his individual capacity, he remains as a defendant.

while detained at the Jail. Plaintiff seeks compensatory and punitive damages, attorney's fees, and costs for constitutional violations he asserts the defendants committed that resulted in Preyer's death.[2] Pending before the court are the motions to dismiss pursuant to Fed.R.Civ.P 12(b)(6) filed individually by the six PHS defendants; the motion to dismiss filed by PHS; and the joint motion to dismiss filed by McNesby, Wertz, and the five correctional officer defendants.[3] Plaintiff has responded in opposition and, with leave of court, the PHS defendants replied. For the reasons stated below, the court GRANTS the motion to dismiss filed by Grice and DENIES all other motions. Because plaintiff has indicated that he is able to file a second amended complaint that incorporates additional, more detailed allegations, however, leave to do so is granted.

**Background**

Plaintiff makes the following factual allegations in his amended complaint.[4] For the purpose of ruling on the pending motions to dismiss for failure to state a claim under Rule 12(b)(6), the court accepts these allegations as true, having drawn all reasonable inferences in plaintiff's favor. *See Kirby v. Siegelman,* 195 F.3d 1285, 1289 (11th Cir. 1999).

On or about April 27, 2006, Preyer, a 5'5", 141 pound forty-five year old male, was arrested for aggravated battery and taken to the ECJ. Because he displayed symptoms

---

[2] In addition to asserting three constitutional claims in the eight-count complaint (*see* amended complaint, doc. 59, Counts I, II, and III), plaintiff also asserts state law claims of negligence and strict liability against Taser International, Inc. (*id.*, Counts IV, V, VI, and VII) and a claim of negligence against PHS (*id.*, Count VIII). There is no motion by Taser International, Inc., now before the court, and PHS' motion addresses only the constitutional claim against it. Accordingly, in this order the court limits its discussion to the facts and law pertaining to the three constitutional claims only.

[3] The docket numbers of the defendants' motions to dismiss, plaintiff's responses, and any replies are, respectively: Burden: docs. 82, 96, and 124; Szmurlo: docs. 83, 101, and 123; Grice: docs. 84, 99, and 126; Davis: docs. 86, 97, and 125; Laird: docs. 87, 100, and 128; C. White: docs. 88, 102, and 127; PHS: 90 and 103; McNesby, Wertz, Hankinson, Phillips, Brazwell, Covotta, and S. White: docs. 91 and 104. In addition to these documents, also before the court are several notices of supplement authority submitted by defendants.
In their motions several of the parties requested oral argument; the court concluded that the motions could be decided on the papers submitted, however, and therefore did not schedule argument.

[4] Plaintiff attempts to make numerous additional factual allegations in his responses to the motions to dismiss. The court has not considered these allegations as they are not included in the complaint to which the defendants were required to respond; plaintiff may properly present the allegations in his second amended complaint.

of confusion, disorientation, and mania Preyer was transferred to the Lakeview Center, a psychiatric facility.  Preyer was diagnosed with schizophrenia at the Center and, prior to his release from the facility, was prescribed Haldol, a psychotropic drug, and Cogentin, a medication used to counter certain adverse effects of Haldol.

On May 31, 2006, Preyer was again arrested and booked into the ECJ on a charge of failure to appear for a proceeding related to the April 2006 battery charge.   Upon entering the Jail Preyer underwent a medical screening.  The medical technician who performed the examination and recorded his findings in Preyer's medical record described Preyer as being calm, cooperative, alert, and oriented; Preyer's mood was normal. Preyer informed the technician that he had recently been hospitalized for schizophrenia, had been prescribed Haldol for the condition, and had taken his last dose of the medication earlier that day. The technician included this information in Preyer's medical chart. The technician also completed a mental health referral form for Preyer, which was forwarded to the Jail's mental health department, and he obtained a signed waiver from Preyer for the release of his psychiatric records from the Lakeview Center.  Following his screening, Preyer was moved to the ECJ's main housing unit.

The next day, June 1, 2006, Preyer's psychiatric records were received from the Lakeview Center and attached to his ECJ medical chart.  The records confirmed that Preyer suffered from schizophrenia and was being treated with Haldol and Cogentin. Preyer also completed an inmate medical request form on June 1, 2006, in which he asked for Haldol and vitamins.  PHS nurse Grice received the request form on June 2, 2006, which she forwarded to the medical health unit for follow-up.  Grice also received a sick call slip from Preyer. Grice noted in her report that Preyer did not appear to be having any mental health or medical problems on that date which required immediate attention and she took no other measures regarding his care.

Plaintiff further alleges that on June 6, 2006, PHS mental health counselor Laird received Preyer's medication request form seeking Haldol and his mental health referral form.  Laird wrote in a response to Preyer that the Jail did not provide sleep medication to inmates but Laird took no further action on Preyer's behalf.  Plaintiff alleges that Laird indicated he would not investigate Preyer's request further until the Jail had received the Lakeview Center records.   Laird apparently was unaware that the records had in fact

already been received and had been placed with Preyer's chart some five days earlier. Szmurlo, a psychiatrist employed at the ECJ two days per week, also was working at the Jail on June 6, 2006. Plaintiff alleges that on June 6 Szmurlo denied Preyer's request for anti-psychotic medications.

Plaintiff asserts that Preyer was still not receiving his anti-psychotic medication on June 9, 2006, when his cellmates notified correctional officers that Preyer was behaving strangely, including claiming to be God. Preyer was moved to another cell, where he again became disruptive by throwing his cellmate's property into the trash and claiming the devil was in the housing unit. Preyer was taken to the Jail infirmary for observation; he reportedly continued to engage in odd, though nonviolent, behavior. PHS nurse C. White saw Preyer but purportedly did not examine him. Still awaiting a mental health evaluation, Preyer was moved from the infirmary into the administrative confinement unit. According to plaintiff, there is no documentation regarding Preyer's trip to the infirmary or showing that the mental health department was notified of the need to evaluate Preyer.

On June 12, 2006, PHS nurse Davis examined Preyer. Davis completed a PHS health evaluation form and a mental health questionnaire. Preyer told Davis that he suffered from schizophrenia, for which he took Haldol and Cogentin, and he again requested his medications. Davis took no action on Preyer's request because she apparently assumed Preyer was being seen by the mental health department. The next day, June 13, 2006, Szmurlo reviewed Preyer's Lakeview Center records. Based on this review, but without examining Preyer, Szmurlo directed that Preyer receive Haldol and Cogentin.

Sometime between 3:00 p.m. and 3:30 p.m. on June 13th, Preyer's cellmate informed staff that Preyer had tampered with his property. When correctional officers responded, Preyer began throwing items out of the cell, speaking incoherently, and violently shaking the cell bars. Preyer's cellmate informed the officers that Preyer also had been drinking water from the toilet. At approximately 3:53 p.m., Preyer was transferred to another cell. At 4:00 p.m., an officer observed that Preyer was wet and had assumed a karate stance with his Jail jumpsuit rolled down. Preyer was jumping up and kicking the cell door. Eventually Preyer calmed down and, without resisting, was secured in a restraint chair. PHS nurse Burden examined Preyer at that time. She checked on Preyer again at

about 5:30 p.m. Burden noted at that time that Preyer was "okay." She also reported that he was singing, humming, and calm.

Hankinson, a supervisor for the oncoming correctional staff shift, was notified at approximately 6:00 p.m. that Preyer was confined in a restraint chair. Another officer, who was working in Central Control, was notified approximately one hour later that Preyer was in the restraint chair and was given a check sheet for monitoring Preyer at fifteen minute intervals; over the course of the following hour the officer noted no problems with Preyer.

At approximately 7:30 p.m. Burden notified Gregory, a PHS nurse who was assigned to the incoming medical staff shift, that Preyer was in a restraint chair.[5] At approximately 8:10 p.m., Gregory, accompanied by Hankinson, entered Preyer's cell. Preyer was rocking the restraint chair back and forth; he appeared agitated and was speaking rapidly. Although his verbalizations were difficult to understand, Preyer managed to convey to Gregory that he took Haldol and was a patient at Lakeview Center. Preyer was released from the chair by S. White and Hankinson, was permitted to sit on a bench in the cell, and began eating a sandwich that had been provided to him at his request. Gregory returned to the infirmary, determined that Szmurlo had ordered Haldol and Cogentin earlier in the day, and prepared the medications for administration to Preyer.

At 9:05 p.m., before Gregory was able to administer Preyer's medications to him, correctional officers were called to Preyer's cell again because he had removed his clothing and once more was drinking water from the toilet. Deputies Brazwell and Phillips attempted to speak with Preyer but received no intelligent response. Their efforts to have Preyer voluntarily get up from the toilet and dress himself were unsuccessful. Hankinson then arrived. Brazwell, Hankinson, and Phillips forced Preyer off the toilet to a standing position. Preyer resisted, but Hankinson was able to place a handcuff on one of Preyer's wrists. Deputy Covotta arrived on the scene and tried to assist the other officers, who were still trying to handcuff Preyer. During the struggle Hankinson announced that Preyer was attempting to pull Phillips' taser from its holster; Hankinson then reached around Phillips and fired his own taser at Preyer, striking him. When Preyer continued to resist being handcuffed, Hankinson tased him again. As the struggle continued Preyer and the officers

---

[5] As noted above, Gregory no longer is a defendant in the case, having been voluntarily dismissed by plaintiff.

fell to the floor. Deputy S. White arrived and attempted to assist the other officers by restraining Preyer's legs and then tasing Preyer in the lower back, with the taser's probe cartridge removed.  The tasing reportedly had no effect. Hankinson also removed the probe cartridge from his taser and applied a direct contact tase to one of Preyer's calves. The officers were eventually able to finish handcuffing Preyer, who had begun vomiting. The restraint chair was put in place and Preyer was forced into it and secured. Preyer continued to vomit.

At the instruction of Gregory, Preyer was moved to the infirmary, at approximately 9:30 p.m.  Gregory checked Preyer after the move and found his face and chest were covered in vomit.   She also noted that his breathing was rapid and labored.  Preyer also began to gurgle and cough, and he continued to vomit.  He was removed from the restraint chair and placed on the floor, where the vomiting persisted.  At that point, no respirations or pulse were detected.  Resuscitation was attempted but was unsuccessful.  Preyer was taken to a local hospital by ambulance, where he was pronounced dead at 10:08 p.m.  An autopsy was conducted on the body the following day, June 14, 2006.  The coroner reported that the cause of Preyer's death was excited delirium, with physical struggle and taser use as contributing factors.

In Counts I through III of the amended complaint plaintiff asserts violations of the Fourth, Fifth, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983.  In Count I plaintiff alleges that Grice, Laird, C. White, Davis, Burden, and Szmurlo acted with deliberate indifference to Preyer's serious medical need by failing to take timely action to assure he received his prescribed anti-psychotic medication while detained.  Count II is a claim against Hankinson, Phillips, Brazwell, Covotta, and S. White in which plaintiff alleges the use of excessive force during the defendants' physical struggle with Preyer and multiple taser deployments.  In Count III plaintiff alleges that McNesby, Wertz, and PHS failed to establish proper procedures and policies for dealing with mentally ill detainees as well as failed to train and supervise staff in the proper care of such detainees.[6]

The PHS defendants seeks dismissal of Count I on the ground the facts alleged by plaintiff concerning Preyer's mental status and medication are insufficient to satisfy both

---

[6] Escambia County is also named as a defendant in Count III but, as noted, has not independently moved for dismissal.

Case No. 3:08cv247/MCR/MD

the objective and subjective components of a § 1983 claim of deliberate indifference to a serious medical need. The correctional officer defendants move for dismissal of Count II, asserting that the physical force they employed, including tasing Preyer four times, constituted a good faith effort to maintain discipline and thus plaintiff's allegations fail to state a claim of the use of excessive force.  The correctional officer defendants also assert their entitlement to qualified immunity.  With respect to Count III, McNesby and Wertz argue that because plaintiff has failed to state an underlying constitutional violation, his claims of constitutionally deficient policies, practices, supervision, and training are not actionable.  PHS, which is also named in Count III, seeks dismissal of this count on the ground the claims against McNesby, Wertz, Escambia County, and PHS are improperly commingled and thus violate the pleading requirements set forth in Federal Rules of Civil Procedure 8(a) and 10(b).

**Pleading Standard**

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move for the dismissal of a claim for "failure to state a claim upon which relief can be granted."  A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which is that the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).  Rule 10(b) requires that the allegations of a claim "shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances . . . [and] [e]ach claim found upon a separate transaction or occurrence . . . shall be stated in a separate count."  Fed.R.Civ.P. 10(b).

While the requirements of pleading under the Federal Rules are "liberal," and a litigant need not "allege a 'specific fact' to cover every element or allege 'with precision' each element of a claim[,]" *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001), to satisfy the pleading requirements of Rule 8 a complaint must give the defendant fair notice of what the plaintiff's claims are and the grounds upon which they rest. *See Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  In reviewing a motion pursuant to Rule 12(b)(6), the court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged.  *See Swierkiewicz*, 534 U.S. at 511 (citation omitted);

*United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 881 (11th Cir. 2003). Until the Supreme Court decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), courts routinely followed the rule that "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that plaintiff could prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46.  Rejecting a literal reading of the "no set of facts" rule, the Court held in *Twombly* that although a complaint need not plead "detailed factual allegations," in order to survive a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . . " *Twombly*, 127 S.Ct. at 1964-65. In other words, the complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. ____, 129 S.Ct. 1937, 1949, L.Ed.2d ____ (U.S.  2009) (citing *Twombly*, 550 U.S. at 556-70) (quotation marks omitted). As the Court explained in *Iqbal*, a claim is plausible on its face when the plaintiff pleads facts that permit the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard is not akin to the more demanding "probability requirement," though it does require more than a "sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*  Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"— "that the pleader is entitled to relief." *Id.* (citing Fed. Rule Civ. Proc. 8(a)(2)).

**Discussion**

To state a claim for relief a 42 U.S.C. § 1983 plaintiff must show the deprivation of a right secured by the Constitution or laws of the United States; he must also show that the person who committed the alleged deprivation acted under color of state law. *See Focus on the Family v. Pinellas Suncoast Transit Authority*, 344 F.3d 1263, 1277 (11th Cir. 2003); *Patrick v. Floyd Medical Center*, 201 F.3d 1313, 1315 (11th Cir. 2000).  In this case, there is no dispute that each of the defendants now before the court acted under color of state law.

Additionally, because Preyer was a pretrial detainee rather than a convicted prisoner at the time of the events giving rise to this action, plaintiff's claims arise under the

Fourteenth Amendment.[7] *See Whitley v. Albers*, 475 U.S. 312, 318, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986); *Lumley v. City of Dade City, Florida*, 327 F.3d 1186, 1196 (11th Cir. 2003). For purposes of reviewing plaintiff's claims, however, there is no meaningful difference between the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996); *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985). The court therefore analyzes plaintiff's claims under the decisional law of both amendments. *See Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1425 n. 6 (11th Cir. 1997).

### Count I: Deliberate Indifference to a Serious Medical Need
### (Defendants Grice, Laird, C. White, Davis, Burden, and Szmurlo)

It is well settled that "deliberate indifference to [the] serious medical needs of [a] prisoner [ ] constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003); *Campbell v. Sikes*, 169 F.3d 1353 (11th Cir. 1999). To establish a claim of deliberate indifference a plaintiff must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury. *Danley v. Allen,* 540 F.3d 1298, 1310 (11th Cir. 2008.). The first of these three requirements involves an objective inquiry. A medical need is serious when it "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 n.9, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)). The second requirement of a deliberate indifference claim involves a subjective inquiry. To be deliberately indifferent, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 1974, 128 L.Ed.2d 811 (1994). Conduct

---

[7] Thus, the claims in this case are not governed by the Fourth or Fifth Amendments, as alleged by plaintiff, but rather the Fourteenth Amendment.

Case No. 3:08cv247/MCR/MD

that is merely inadvertent or negligent is not sufficient to state a constitutional claim; indeed, the plaintiff must show that the defendant's conduct constituted more than gross negligence. *See Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005); *see also Miller v. King*, 384 F.3d 1248, 1261 (11th Cir. 2004) (noting, after *Farmer* that gross negligence fails to satisfy state-of-mind requirement for deliberate indifference). Rather, "medical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir.1991) (quoting *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)). "When the need for treatment is obvious, medical care that is so cursory as to amount to no treatment at all may amount to deliberate indifference." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004) (quotation omitted). Moreover, a delay in treatment can constitute deliberate indifference when it is apparent that delay will exacerbate the medical condition, it does so, and the delay is not medically justified. *Taylor v. Adams*, 221 F.3d 1254, 1259-60 (11th Cir. 2000). Thus cruel and unusual punishment involves more than just ordinary lack of due care for the prisoner's interest or safety; it consists of wantonness or obduracy. *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084 (1986) (stating that "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock."). The third requirement of a deliberate indifference claim, causation, demands "an affirmative causal connection between the actions taken by a particular person 'under color of state law' and the constitutional deprivation." *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir.1993) (quoting *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir.1982)). An official's acts or omissions must be "the cause[,] not merely a contributing factor" of the constitutional violation. *Id.*

Each of the PHS defendants argues that plaintiff has failed to allege that Preyer suffered from an objectively serious medical need. This contention warrants little discussion; indeed, in light of the allegations made in the amended complaint, the court

finds the argument offensive. Plaintiff alleges that at the time Preyer was rearrested and taken to the Jail on May 31, 2006, he had been diagnosed with schizophrenia at the Lakeview Center and prescribed anti-psychotic medications for the condition; moreover, by June 1st Preyer's Lakeview Center records were in the possession of the Jail. Thus plaintiff has alleged that at the time of Preyer's detention at the ECJ Preyer suffered from a medical need that had been diagnosed by a physician as mandating treatment. *See Farrow*, 320 F.3d at 1243. Plaintiff's allegations easily are sufficient to establish the objective component of a claim of deliberate indifference.

As to Grice, plaintiff's allegations falter with respect to the second and third requirements necessary to state a claim of deliberate indifference. According to plaintiff, as a direct and proximate effect of conduct by the PHS defendants that delayed Preyer's receipt of his anti-psychotic medications he suffered the excited delirium that contributed to his death. Plaintiff alleges that Grice received Preyer's medication request on June 2, 2006, and forwarded it to the medical health unit for follow-up, received a sick call slip from Preyer that date, and noted in Preyer's record that he did not appear to be having any mental health or medical problems at that time requiring immediate attention. These allegations are not sufficient to show that Grice was both aware of facts from which she could infer that a substantial risk of harm existed to Preyer by not immediately receiving anti-psychotic medication and that she in fact also drew that inference. *Farmer*, 511 U.S. at 837. At most, the allegations suggest conduct that was merely inadvertent or something less than grossly negligent. *See Bozeman*, 422 F.3d at 1272. The allegations against Grice simply do not rise to the level of wanton or obdurate acts or omissions. *Whitley*, 475 U.S. at 319. Additionally, even assuming the allegations were sufficient to show Grice's deliberate indifference to Preyer's serious medical need, the court concludes they do not adequately establish an affirmative causal connection between Grice's conduct and the mental decompensation Preyer eventually experienced or his death on June 13, 2005. *Danley,* 540 F.3d at 1310. While plaintiff alleges that Grice delayed Preyer's receipt of his medications, the allegations do not show that her acts or omissions alone were the actual cause, and not merely a contributing factor, of any constitutional violation Preyer suffered.

*LaMarca*, 995 F.2d at 1538. In short, the facts as alleged by plaintiff do not permit the court "to draw the reasonable inference" that Grice was deliberately indifferent to Preyer's serious medical need and thus to conclude that the allegations state a facially plausible claim for relief against her. *Iqbal*, 129 S.Ct. at 1949. Accordingly, Grice's motion to dismiss is due to be granted.

With respect to the allegations against Laird, C. White, Davis, Burden, and Szmurlo, the court reaches a different conclusion. While plaintiff has indicated in his responses to the motions that he is now in possession of new information that may provide additional details regarding Preyer's detention at the Jail, the court is satisfied that the amended complaint, as pleaded, is sufficient to withstand a Rule 12(b)(6) motion for dismissal. As to each of these defendants, the amended complaint contains allegations reflecting an obvious need for treatment to which the defendant either responded in a cursory manner—effectively no response at all—or by delaying Preyer's receipt of necessary treatment which his medical records indicated he required and which he repeatedly requested. *Brown*, 387 F.3d at 1351; *Taylor*, 221 F.3d at 1259-60. *See also Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 704-05 (11th Cir. 1985) (noting that the intentional failure to provide medical care known by the defendant to be necessary constitutes deliberate indifference). The motions to dismiss Count I filed by Laird, C. White, Davis, Burden, and Szmurlo are therefore denied. Plaintiff nevertheless is granted leave to file an amended complaint that clarifies or supplements his allegations that defendants were deliberately indifferent to Preyer's serious medical need.

### Count II: Use of Excessive Force
### (Defendants Hankinson, Phillips, Brazwell, Covotta, and S. White)

Under the protection guaranteed by the Due Process Clause of the Fourteenth Amendment, a pretrial detainee must not be punished in any manner prior to a lawful conviction. *See Bell*, 441 U.S. at 536; *McMillian v. Johnson*, 88 F.3d 1554, 1564 (11th Cir. 1996). The Constitution, however, permits the use of physical coercion on a detainee "in a custodial setting as long as it is applied in a good faith effort to maintain or restore discipline and not maliciously and sadistically to cause harm." *Skrtich v. Thornton*, 280 F.3d

1295, 1300 (11th Cir. 2002). Thus, only a use of force that "is physically barbarous [or] involv[es] . . . the unnecessary and wanton infliction of pain or the imposition of pain totally without pen[o]logical justification" violates due process. *See Evans v. Dugger*, 908 F.2d 801, 803 (11th Cir. 1990). Stated otherwise, the plaintiff must show that the defendant's conduct "shocks the conscience." *Lumley*, 327 F.3d at 1196; *Hope*, 536 U.S. at 738 (finding that subjecting prisoner to being tied to outdoors hitching post in heat of day without water or access to a bathroom for seven hours violated the Eighth Amendment). To be sure, the conduct at issue must "offend even hardened sensibilities" and implicate only the "most egregious official conduct." *Carr v. Tatangelo*, 338 F.3d 1259, 1271, n. 23 (11th Cir. 2003). The court may consider several factors in gauging the legitimacy of the use of physical coercion in a given situation, including "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Skrtich*, 280 F.3d at 1300 (quoting *Hudson v. McMillian*, 503 U.S. 1, 7-8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321 (quotation omitted).

Plaintiff's allegations that Hankinson, Phillips, Covotta, Brazwell, and S. White used excessive force against Preyer on the day of his death are sufficient to state a claim for relief. Under the exigent circumstances described by plaintiff, which include the disruption in the cellblock Preyer was creating and the health risk to him of drinking water from the toilet, the court concludes that the defendants could have reasonably perceived a threat to Preyer himself and to others. Next, although the alleged facts suggest there was a need for the application of some force to control Preyer, plaintiff adequately alleges that the amount of force applied was disproportionate to the need: approximately one hour after the five correctional officers subdued the 5'5", 141 pound mentally ill Preyer using physical force and four taser deployments, two of which were direct contact deployments, Preyer

was dead. While further development of the record is expected, at this pleading stage of the litigation the court finds the facts alleged are sufficient to permit the court "to draw the reasonable inference" that plaintiff has shown his entitlement to relief on the use of excessive force claim. *See Crowe v. Coleman*, 113 F.3d 1536, 1539 (11th Cir.1997) (stating that where the complaint alleges claims against multiple defendants in a single count that the allegations can and should be read in such a way that each defendant is having the allegation made about him personally). Plaintiff's allegations are more than "merely consistent with" the possibility that he is entitled to relief; they are sufficient to "show [ ] that [he] is entitled to relief." *Iqbal*, 129 S.Ct. at 1949. Defendants assert their entitlement to qualified immunity, but a defense of qualified immunity is not available in cases in which excessive force was used. Supreme Court decisions have clearly established that the malicious and sadistic use of force is a violation of the Constitution. *See Johnson v. Breeden*, 280 F.3d 1308 (11th Cir. 2002). As the Eleventh Circuit noted in *Johnson*, there is simply no room for a qualified immunity defense for such violations. *Id.* At this phase of the litigation, where the court has concluded that the allegations against the correctional officer defendants, taken as true, violate clearly established law, the defense of qualified immunity is not available. *See Fortner v. Thomas*, 983 F.2d 1024, 1028 (11th Cir. 1993) (noting that in reviewing a motion to dismiss the court should examine complaint to determine "whether, under the most favorable version of the facts alleged, defendant's actions violate clearly established law."). The joint motion to dismiss Count II by Hankinson, Phillips, Covotta, Brazwell, and S. White is therefore denied. Plaintiff is, however, granted leave to file an amended complaint that clarifies or supplements his allegations of the use of excessive force.

### Count III: Supervisory Liability
### (Defendants PHS, McNesby, and Wertz)

Plaintiff's third constitutional claim is that Escambia County, McNesby, Wertz, and PHS failed to establish proper policies for the treatment of mentally ill inmates or to adequately train and supervise their employees, which resulted in deliberate indifference to Preyer's medical need and the use of excessive force against him. PHS contends that

Count III should be dismissed because in it plaintiff has impermissibly commingled multiple causes of action against multiple defendants. Plaintiff apparently does not dispute that the causes of action in Count III are commingled; he submits, however, that for this particular pleading defect the court should deny the motion to dismiss but permit him to file an amended complaint with a more definite statement of Count III.

In light of the fact that plaintiff apparently does not disagree that Count III should be repleaded because it commingles causes of action, in violation of Federal Rules 8(a) and 10(b), the court will deny PHS' motion to dismiss as moot. Plaintiff is granted leave to file an amended complaint containing a claim for supervisory liability that does not commingle the causes of action. The joint motion to dismiss Count III filed by McNesby and Wertz is likewise denied, as moot.

**Conclusion**

For the reasons discussed, with the exception of Grice's motion, which is granted, the defendants' motions to dismiss are denied. Plaintiff is granted leave to file an amended complaint, which should be submitted within twenty (20) days of the date of this order. As provided in Fed.R.Civ.P. 15(a)(3), after service of the second amended complaint the defendants shall have ten (10) days in which to respond. The court also lifts the stay in this case that was entered August 25, 2008. Given that this case has been pending since June 2008 and that it has been stayed for much of that time, the court expects henceforth to move forward quickly with discovery and dispositive motions.[8] A revised, expedited scheduling order will be entered by separate order.

The parties shall bear their own fees and costs.

Accordingly, it is ORDERED:

1. The motion to dismiss Count I of the amended complaint filed by Margaret Grice (doc. 84) is GRANTED.

2. The motions to dismiss Count I of the amended complaint filed by Trudy Burden; Piotr Szmurlo, M.D.; Mary Davis; Lynn Laird; and Cabot White (docs. 82, 83, 86,

---

[8] In light of the court's findings in this order, additional motions to dismiss are not anticipated and, if filed, may be summarily addressed.

Case No. 3:08cv247/MCR/MD

87, and 88) are DENIED.

   3. The motion to dismiss Count III of the amended complaint filed by Prison Health Services, Inc. (doc. 90) is DENIED, as moot.

   4. The joint motion to dismiss Count II of the amended complaint filed by Ronald Hankinson; David Phillips; Joseph Lamar Brazwell, Jr.; John Covotta; and Shaun White (doc. 91) is DENIED.  As to Ron McNesby and Barbara Wertz, the joint motion to dismiss Count III is DENIED, as moot.

   5. Plaintiff shall have twenty (20) days from the date of this order in which to file a second amended complaint. As provided in Fed.R.Civ.P. 15(a)(3), after service of the second amended complaint the defendants shall have ten (10) days in which to respond.

   6. Any requests by the parties for costs incurred in connection with filing their motions and/or response are DENIED.

   7. The clerk shall terminate the motion to dismiss filed by defendant Gregory (doc. 85).

   8. The docket shall reflect that Sheriff David Crosby has been substituted for former Sheriff Ron McNesby, in his official capacity only.

   9. The stay entered August 25, 2008, is LIFTED.  Upon entry of the instant order on the docket the clerk shall refer this case to chambers for issuance of a revised scheduling order.

   **DONE and ORDERED** this 5th day of June, 2009.

             *s/ M. Casey Rodgers*
             **M. CASEY RODGERS**
             **UNITED STATES DISTRICT JUDGE**